IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **BRANDON WARFIELD,** | * | |
| **Petitioner,** | * | |
| v. | * | **Civ. No. DLB-21-990** |
| **STATE OF MARYLAND,** *et al.*, | * | |
| **Respondents.** | * | |

**MEMORANDUM OPINION**

Brandon Warfield filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF 1 (pet.) & 4 (am. pet.). The respondents ask the Court to dismiss the petition because Warfield's grounds for habeas relief cannot be raised in a habeas petition or lack merit and one ground is procedurally defaulted. ECF 8, 20. Warfield filed a reply. ECF 10. No hearing is necessary. *See* Rule 8(a), *Rules Governing § 2254 Cases in the U.S. Dist. Cts.*; Loc. R. 105.6 (D. Md. 2023); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For the following reasons, the petition is dismissed and a certificate of appealability shall not issue.

**I.      Background**

On November 15, 2017, Warfield was arrested at a Royal Farms gas station in Harford County, Maryland, and the police seized drugs that were found in his vehicle. On February 13, 2018, Warfield was indicted on charges of, *inter alia*, possession with the intent to distribute cocaine and possession with the intent to distribute marijuana. ECF 8-1, at 3. He moved to suppress the evidence seized from his vehicle. ECF 20-2.

On June 6, 2018, the Circuit Court for Harford County held a hearing on Warfield's motion to suppress. *Id.* Detective David Waldsmith of the Harford Sheriff's Department testified about

the events leading up to Warfield's arrest. *Id.* at 4–60. Waldsmith described the observations of four other officers—Detective Sam Vivino, Corporal Brandon Underhill, Corporal Brad Sives, and Corporal Ryan Wolfe—who surveilled Warfield on November 15, 2017. *Id.* On cross-examination, Detective Waldsmith acknowledged that his testimony was based on the collective knowledge of the task force and that he did not arrive at the Royal Farms until after Warfield was out of his vehicle. *Id.* at 46–47. The state court denied Warfield's motion. *Id.* at 89–91. The court found that there was "articulable suspicion" to make a stop based on Warfield's history of contact with people who overdosed on drugs, his arrest for possession of drugs a month earlier, and the officers' observations of Warfield's participation in what appeared to be drug transactions months earlier, earlier in the day on November 15, and at the Royal Farms gas station immediately before his arrest. *Id.*

From April 3 through 8, 2019, Warfield was tried by a jury sitting in the Circuit Court for Harford County, Maryland. ECF 20-6–20-9. Underhill and Sives testified about what they witnessed while surveilling Warfield on November 15, 2017. ECF 20-7, at 149–60, 160–70. Their accounts differed from Detective Waldsmith's testimony during the suppression hearing. The jury found Warfield guilty of possession with intent to distribute cocaine and possession of cocaine and not guilty of possession with intent to distribute marijuana or possession of Xanax. ECF 20-9, at 50–51. On July 23, 2019, the state court sentenced Warfield to 15 years' incarceration. ECF 20-10, at 16.

Warfield filed a direct appeal with the Appellate Court of Maryland. He argued that the trial court erred in (1) finding that "his seizure was merely an investigatory stop that required only a reasonable articulable suspicion that criminal activity was afoot," as opposed to the arrest without probable cause he believed it to be; (2) "failing to dismiss his case after 180 days had passed since

his initial appearance in court"; and (3) "failing to declare a mistrial after one of the jurors expressed his view to his co-jurors, during trial, that Mr. Warfield was guilty." ECF 8-1, at 10. In an August 31, 2020 unpublished opinion, the court affirmed his conviction. ECF 8-1, at 9–22. Warfield filed a petition for a writ of certiorari with the Supreme Court of Maryland, which denied the petition on November 20, 2020. ECF 8-1, at 42.

On December 8, 2021, Warfield, proceeding without counsel, filed a motion to vacate the judgment in state court. ECF 20-1, at 145–50. He argued that there was "newly discovered and fabricated evidence" that required the court to vacate its judgment. *Id.* at 146. According to Warfield, he learned after trial that a former State's Attorney's was "disbarred for withholding potentially exculpatory evidence," which, in Warfield's view, calls into question the credibility of state witnesses against him. *Id.* at 146–47. He also argued that he learned at trial that state witnesses provided fabricated and false testimony regarding the chain of custody for evidence and that Waldsmith gave false testimony at the suppression hearing—testimony the court relied on to deny his motion to suppress. *Id.* at 148. On May 27, 2022, the state court summarily denied relief because Warfield did not identify newly discovered evidence. *Id.* at 145. Warfield did not seek further review with the Appellate Court of Maryland or the Supreme Court of Maryland.

Warfield claims he filed a petition for post-conviction relief in state court and served the petition on the state. ECF 21, at 1. Even though the state filed an answer to the petition on March 15, 2022, ECF 20-1, at 151–52, the state court docket indicated that "[a]s of 3/15/22, no Post-Conviction has been filed with the Clerk's Office," *id.* at 6. Warfield insists he mailed the petition to the state court and received a return receipt for it. ECF 21, at 1; ECF 21-1, at 1. He states that he did not know the petition was not filed until the state public defender's office told him in September 2022. ECF 20-1, at 1. He attached a September 20, 2022 letter from the public defender

3

informing him that his petition was "not actually docketed" and recommending that he "refile" the petition. ECF 21-2, at 1. Despite this notice, there is no docket entry for a post-conviction petition, and Warfield does not contend that he refiled the petition. *See* ECF 20-1, at 5–6.

Warfield filed his petition for writ of habeas corpus in this Court on April 21, 2021 and amended it on May 19, 2021. ECF 1, 4. Warfield alleges four grounds for relief: (1) the trial court erred in denying his motion to suppress (ECF 4, at 5; ECF 4-1, at 10–12); (2) the trial court erred in denying his motion for a mistrial (ECF 4, at 5; ECF 4-1, at 12–14); (3) the trial court violated his speedy trial rights (ECF 4, at 5; ECF 4-1, at 14–15); and (4) the state used perjured testimony at the motion to suppress hearing (ECF 4, at 5–6). The respondents contend that grounds one, two, and three cannot be raised in a habeas petition, that ground two lacks merit even if it can be raised, and that ground four is procedurally defaulted.

## II. Standard of Review

A state prisoner's application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Section 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447, 455 (2005) (per curiam). The standard is "difficult to meet" and requires reviewing courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citation omitted); *see also White v. Woodall*, 572 U.S. 415, 419–20 (2014) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement" (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011))).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state's adjudication is contrary to clearly established federal law under § 2254(d)(1) when the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* (quoting *Williams*, 529 U.S. at 410) (emphasis removed). "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411.

Further, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'" *Id.* (quoting *Rice v. Collins*, 546 U.S. 333, 341–42 (2006)).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379 (quoting *Wilson v. Ozmint*, 352 F.3d 847, 858 (4th Cir. 2003)).

### III. Analysis

#### A. Ground One

Warfield contends that the trial court erred in denying his motion to suppress the evidence seized after his arrest. In denying the motion, the trial court reasoned that Warfield was detained, not arrested, and that there was a reasonable articulable suspicion for his detention. The appellate court agreed with Warfield that the stop qualified as an arrest, but it affirmed the trial court's ruling on the basis that there was probable cause for the arrest. Warfield argues now that the appellate court's conclusion that there was probable cause to arrest him was erroneous because it was based on the suppression hearing testimony of Detective Waldsmith—who did not have firsthand knowledge of the events leading to Warfield's arrest—and Waldsmith's testimony was clearly contradicted by the trial testimony of officers who did have firsthand knowledge of the basis for Warfield's arrest. ECF 4-1, at 10–11.

Federal habeas relief is not available for an alleged Fourth Amendment violation when a petitioner had "an opportunity for full and fair litigation" of his Fourth Amendment claim in his state proceedings. *Stone v. Powell*, 428 U.S. 465, 494 (1976); *accord Boggs v. Bair*, 892 F.2d

6

1193, 1199–200 (4th Cir. 1989) (recognizing that a petitioner must have a "full and fair opportunity to litigate" his claims in state court); *Doleman v. Muncy*, 579 F.2d 1258, 1265 (4th Cir. 1978). *Stone* did not explain what it means to have "an opportunity for full and fair litigation" of a Fourth Amendment claim. Since *Stone*, the Fourth Circuit has provided guidance on the issue. To determine whether a petitioner was afforded "an opportunity for full and fair litigation" of a Fourth Amendment claim, district courts review "the relevant state statutes" and "the applicable state court decisions" and take "judicial notice of state practice" to decide whether "the petitioner was afforded an [o]pportunity to raise his Fourth Amendment claims under the then existing state practice." *Doleman*, 579 F.2d at 1265. The district court "need not inquire further into the merits of the petitioner's case . . . unless the prisoner alleges something to indicate that his opportunity for a full and fair litigation of his Fourth Amendment claim or claims was in some way impaired." *Id.*

Under Maryland law, Warfield had an opportunity for a full and fair litigation of his Fourth Amendment claim. With the assistance of counsel, Warfield challenged the validity of his arrest in a pre-trial hearing. And on direct appeal after the trial, Warfield, once again with the assistance of counsel, raised the Fourth Amendment claim. Both the trial court and the appellate court addressed Warfield's Fourth Amendment claims. Warfield argues he did not have a full and fair opportunity to litigate his Fourth Amendment claim because the appellate court relied on demonstrably false suppression hearing testimony when it affirmed the denial of the suppression motion. Even if the testimony on which the appellate court relied was false, Warfield still had

every opportunity to challenge the Fourth Amendment violation in Maryland courts.[1] And after the appellate court ruled, Warfield argued in his petition to the Maryland Supreme Court that the officers' trial testimony revealed the falsity of the suppression hearing testimony that the appellate court relied on in affirming the denial of the motion to suppress. ECF 8-1, at 23–24. Maryland's highest court denied his petition. *Id.* at 42. Warfield had a full and fair opportunity to litigate his Fourth Amendment claim in the Maryland courts. His first ground for habeas relief is barred by *Stone*. *See Grimsley v. Dodson*, 696 F.2d 303, 304 (4th Cir. 1982) ("*Stone v. Powell* marked, for most practical purposes, the end of federal court reconsideration of Fourth Amendment claims by way of habeas corpus petitions where the petitioner had an opportunity to litigate those claims in state court.").

**B. Ground Two**

Warfield contends that the trial court erred in denying his motion for a mistrial on the ground that Juror No. 59 engaged in premature deliberations. The respondents argue that Warfield cannot raise this argument in a federal habeas petition because it is not a federal constitutional claim. ECF 8, at 18–20. The Court disagrees. The Sixth Amendment guarantees the right to an

---

[1] *See Carr v. Runnels*, No. C 03–1369, 2007 WL 133971, at *5 (N.D. Cal. Jan. 16, 2007) (observing that, although the use of perjured testimony may state an independent due process claim, it "does not call into question the adequacy of the state hearing procedures with which petitioner was provided"); *Hernandez v. Filion*, No. 05 Civ. 4046, 2005 WL 3164063, at *6 (S.D.N.Y. Nov. 29, 2005) (holding that "*Stone v. Powell* bars [petitioner's] claim regarding perjury at the suppression hearing" because the admission of an officer's perjured testimony at hearing "does not mean that [the state] provided [petitioner] with no corrective procedures at all to redress the alleged Fourth Amendment violations" or that "the alleged perjury caused [petitioner] to be precluded from using the suppression mechanism" (internal quotation marks and citations omitted)); *United States ex rel. Pertz v. Carter*, No. 97 C 2066, 1998 WL 42273, at *3 (N.D. Ill. Jan. 29, 1998) (holding *Stone* barred claim even though claim included allegation of perjury at suppression hearing); *Brown v. Berghuis*, 638 F. Supp. 2d 795, 811 (E.D. Mich. 2009) (holding that perjury at suppression hearing did not deprive petitioner of a full and fair opportunity to litigate his Fourth Amendment claim).

impartial jury. U.S. Const. amend. VI. Even so, Warfield has not shown a Sixth Amendment violation.

To protect a defendant's Sixth Amendment right to an impartial jury, the Court must "ensur[e] that external influences do not affect a jury's deliberation." *United States v. Elbaz*, 52 F.4th 593, 606 (4th Cir. 2022). "In deciphering what due process requires, [the courts] distinguish[] between an extraneous contact that may have affected a jury's ability to remain fair and impartial and an intrinsic influence from a juror's pre-existing bias." *United States v. McClinton*, 135 F.3d 1178, 1186 (7th Cir. 1998); *see, e.g.*, *Tanner v. United States*, 483 U.S. 107, 117–22 (1987); *Remmer v. United States*, 347 U.S. 227, 228–30 (1954). "The distinction between internal and external jury influences is critical . . . ." *Barnes v. Joyner*, 751 F.3d 229, 245–46 (4th Cir. 2014). An external influence is "any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury, [and] is for obvious reasons, deemed presumptively prejudicial." *Remmer*, 347 U.S. at 229. "[U]nlike external influences, which '*necessitate a thorough judicial inquiry*, no such obligation is imposed with regard to an internal jury influence.'" *Barnes*, 751 F.3d at 246 (quoting *Wolfe v. Johnson*, 565 F.3d 140, 161 (4th Cir. 2009)) (emphasis in *Barnes*). "[W]hen there are premature deliberations among jurors with no allegations of external influence on the jury, the proper *process* for jury decisionmaking has been violated, but there is no reason to doubt that the jury based its ultimate decision only on evidence formally presented at trial." *United States v. Resko*, 3 F.3d 684, 690 (3d Cir. 1993).

On the second day of trial, the jury foreperson advised the trial judge by note that Juror No. 59 made comments to the panel that he believed Warfield was guilty. ECF 20-8, at 3. The trial court questioned Juror No. 59, who admitted he said to other jurors, "it is pretty obvious how it [is] going to go down." *Id.* at 6–7. Juror No. 59's expression of his premature opinion that Warfield

9

was guilty was an internal jury influence that did not necessitate a thorough judicial inquiry. Nevertheless, the trial court questioned each juror, six of whom stated that they heard Juror No. 59's comments. *Id.* at 11–27. All of the jurors stated that they could remain fair and impartial despite Juror No. 59's comments. *Id.* Even though the law did not require striking Juror No. 59 from the panel, the trial judge struck the juror and replaced him with an alternate. *Id.* at 31–33. The Appellate Court of Maryland affirmed the trial court's decision, reasoning that the improper communication was internal and finding no abuse of discretion. ECF 8-1, at 18–20. The denial of a mistrial request under these circumstances does not violate the Sixth Amendment. The Appellate Court of Maryland's affirmance of the trial court's decision to deny a mistrial was neither contrary to nor an unreasonable application of federal law. Ground two is not a basis for habeas relief.

### C. Ground Three

Warfield contends that the trial court violated his right to a speedy trial. Specifically, he asserts the court violated his right under Maryland law to be brought to trial within 180 days after when he obtained counsel. ECF 4-1, at 14–15; ECF 10, at 3; *see* Md. Rule 4-271(a)(1). On direct appeal, Warfield likewise argued the delay in his trial violated Maryland law. ECF 20-1, at 71–74; *see* Md. Rule 4-271(a)(1). Maryland Rule 4-271(a)(1) requires the prosecution to bring a defendant to trial within 180 days of the appointment or appearance of counsel unless the trial court grants a postponement for good cause shown. However, a violation of Maryland Rule 4-271(a)(1) is not a constitutional violation or a violation of federal law. As a result, the alleged violation of Maryland's rule on speedy trials is not a cognizable claim for federal habeas corpus relief. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties

of the United States."); *see also Vance v. Bishop*, Civ. No. ELH-18-133, 2020 WL 2732075, at *9 (D. Md. May 22, 2020) (stating Md. Rule 4-271(a)(1) does not implicate the Sixth Amendment), *appeal dismissed & remanded on other grounds*, 827 F. App'x 333 (4th Cir. 2020); *State v. Hicks*, 403 A.2d 356, 361–62 (Md. 1979) (explaining that Maryland intended to provide additional rights beyond the minimum threshold established by the Sixth Amendment). Thus, Warfield has not stated a claim for habeas relief based on a violation of Maryland Rule 4-271(a)(1).

### D. Ground Four

In ground four, Warfield claims the state elicited perjured testimony from Detective Waldsmith at the suppression hearing. ECF 4, at 5–6. But the Court cannot consider this claim because Warfield did not exhaust it in state court. When a state prisoner fails to exhaust available remedies in state court before filing a habeas petition in federal court and the state court "would . . . find the claims procedurally barred," the claims are deemed procedurally defaulted, and the federal court generally may not consider them. *Juniper v. Davis*, 74 F.4th 196, 208–09 (4th Cir. 2023) (quoting *Mahdi v. Stirling*, 20 F.4th 846, 892 (4th Cir. 2021)). The federal court only may consider a procedurally defaulted habeas claim if it falls within a recognized exception. *Richardson v. Kornegay*, 3 F.4th 687, 695 (4th Cir. 2021).

In Maryland, a person convicted of a criminal offense may exhaust a post-conviction claim either on direct appeal or in post-conviction proceedings. To exhaust a claim on direct appeal in non-capital cases, a defendant must assert the claim in an appeal to the Appellate Court of Maryland and then to the Supreme Court of Maryland by way of a petition for a writ of certiorari. *See* Md. Code Ann., Cts. & Jud. Proc. §§ 12-201, 12-301. To exhaust a claim through post-conviction proceedings, a defendant must assert the claim in a petition filed in the circuit court in which the inmate was convicted within 10 years of the date of sentencing. *See* Md. Code Ann.,

Crim. Proc. §§ 7-101–7-103. If a post-conviction petition is denied, a defendant may file an application for leave to appeal with the Appellate Court of Maryland. *Id.* § 7-109. If the Appellate Court of Maryland denies the application, there is no further review available, and the claim is exhausted. Cts. & Jud. Proc. § 12-202.

Warfield did not exhaust his perjured testimony claim. The record reflects that he raised it in his motion to vacate the judgment (ECF 20-1, at 145–50), but when that was denied, he did not file an appeal to the Appellate Court of Maryland. Nor did he raise this issue on direct appeal or file a petition for post-conviction relief after he learned his petition had not been docketed. Warfield argues that he did exhaust this claim because he raised it in his petition for a writ of certiorari to the Supreme Court of Maryland on direct appeal. ECF 10, at 3. That may be true, but he did not first raise the claim as an assignment of error in his direct appeal to the Appellate Court of Maryland. Warfield did not exhaust the claim on direct appeal by presenting it for the first time in his certiorari petition. *See* Cts. & Jud. Proc. §§ 12-201, 12-301. Warfield did not exhaust ground four. *See Juniper*, 74 F.4th at 208–09; Crim. Proc. § 7-109; Cts. & Jud. Proc. § 12-202. The claim is procedurally defaulted.

The Court "may only review procedurally defaulted claims to determine whether the petitioner has shown that he falls within an exception" that permits review of the claim's merits. *Richardson*, 3 F.4th at 695. The two recognized exceptions are: "cause and prejudice, or actual innocence." *United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010). "Cause" is established when a petitioner demonstrates that "some objective factor external to the defense impeded [ ] efforts to comply with the State's procedural rule[.]" *Wolfe*, 565 F.3d at 158 n.27 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "Prejudice" is established when a petitioner demonstrates that "errors at his trial . . . worked to his *actual* and substantial disadvantage, infecting his entire

12

trial with errors of constitutional dimensions[.]" *Id.* (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). Actual innocence, recognized as a "fundamental miscarriage of justice," is established when a petitioner shows, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him[.]" *United States v. Herrera-Pagoada*, 14 F.4th 311, 319 (4th Cir. 2021) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)).

Warfield does not argue and certainly has not shown that either exception to the procedural default bar applies here. Warfield's procedural default of ground four cannot be excused. The Court may not review the procedurally defaulted claim.

### IV.     Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Because the accompanying Order is a final order adverse to the applicant, 28 U.S.C. § 2253(c)(1) requires issuance of a certificate of appealability before an appeal can proceed. A certificate of appealability may issue if the prisoner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects constitutional claims on the merits, a petitioner may satisfy the standard by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a petition is denied on procedural grounds, the petitioner may meet the standard by showing that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Id.* Warfield has failed to satisfy this standard on any of his claims. Therefore, a certificate of appealability shall not issue.

A separate order dismissing the petition and denying a certificate of appealability follows.

<u>September 19, 2024</u>
Date

_____
Deborah L. Boardman
United States District Judge